IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO TRAPPERS ASSOCIATION,
NATIONAL TRAPPERS ASSOCIATION, AND
FUR TAKERS OF AMERICA, INC.,

        Plaintiffs,

vs.                                                          No. 23-cv-444 MV/SCY

RAUL TORREZ, IN HIS OFFICIAL CAPACITY
AS ATTORNEY GENERAL OF NEW MEXICO,
TIRIZIO LOPEZ, IN HIS OFFICIAL CAPACITY
AS VICE-CHAIR OF THE NEW MEXICO STATE
GAME COMMISSION, AND MICHAEL SLOANE,
IN HIS OFFICIAL CAPACITY AS DIRECTOR OF
THE NEW MEXICO DEPARTMENT OF GAME AND FISH.

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Attorney General and State Game Commission Vice Chair's Motion to Dismiss [Doc. 12] and Defendant Michael Sloan's Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [Doc. 14]. The Court, having considered the motions and relevant law, finds that the motions are well-taken and will be granted.

### BACKGROUND

Plaintiffs seek declaratory and injunctive relief prohibiting the enforcement of the Wildlife Conservation and Public Safety Act ("the Act"), codified as N.M. Stat. Ann. § 17-11-1, *et seq*, arguing that it violates the Equal Protection Clauses and Establishment Clauses of both the United States Constitution and the New Mexico Constitution, [U.S. Const. Amend. XIV; N.M. Const. Art. II, § 18; U.S. Const. Amend. I; N.M. Const. Art. II, § 11], and the New Mexico Civil Rights Act, N.M. Stat. Ann. § 41-4A-1, *et seq*. Doc. 1 at 3.

1

Under the Act, it is illegal to "use a trap, snare, or wildlife poison for purposes of capturing, injuring, or killing an animal on public land except as provided in Section 17-11-4…" N.M. Stat. Ann. § 17-11-3; Doc. 1 at 2. Section 17-11-4 enumerates several exceptions. Doc. 1 at 2. Section 17-11-4(H) establishes that the prohibition on trapping does not apply to "enrolled members of a federally recognized Indian nation, tribe or pueblo when trapping is conducted solely for religious or ceremonial purposes pursuant to the rules issued by the department of game and fish in collaboration with the secretary of Indian affairs and consistent with federal procedures for recognition and protection of bona fide Indian nation, tribe or pueblo religious communities." N.M. Stat. Ann. § 17-11-4; doc. 1 at 2. Plaintiffs contend that this exception denies similarly situated people equal protection of the law, favors Native American religion over other religions, and prioritizes religious activities over secular ones. Doc. 1 at 3.

Plaintiffs are comprised of three non-profit organizations dedicated to protecting the rights of people to trap in a lawful and ethical manner, each of which includes individuals who trapped on public lands in New Mexico prior to the authorization of the Act. *Id.* at 3-4. Plaintiffs sue Raúl Torrez in his official capacity as Attorney General of New Mexico, Michael Sloane in his official capacity as Director of the New Mexico Department of Game and Fish, and Tirzio Lopez, in his official capacity as Vice-Chair for the New Mexico State Game Commission, as the person responsible for the actions of the New Mexico State Game Commission because there was no Chair at the relevant time. *Id.* at 5. While Mr. Torrez and Mr. Sloane remain in their respective positions, the current chair of the New Mexico State Game Commission is Richard Stump. Mr. Stump, in his official capacity as Chair for the New Mexico State Game Commission, and therefore the person responsible for the Commission's decisions, should be substituted for Mr. Lopez. Fed. R. Civ. P. 25(d).

2

Plaintiffs filed their Complaint for Declaratory and Injunctive Relief on May 22, 2023. In their Complaint, there is no allegation that anyone has been cited or suffered consequences for violating the Act. There is no allegation that anyone has taken advantage of the exception enumerated in Section 17-11-4(H). There is no allegation that any rules have even been promulgated pursuant to Section 17-11-4(H) that would allow someone to take advantage of the exception. Doc. 18 at 23. There is no disagreement among the parties as to the underlying facts. Doc. 12 at 2.

On July 31, 2023, Defendants filed the instant motions to dismiss the Complaint in its entirety. Doc. 12; doc. 14. Plaintiffs responded in opposition to both motions. Doc. 18. Defendants' motions are now before the Court.

## DISCUSSION

Plaintiffs bring claims under (1) the Equal Protection Clause of the United States Constitution, (2) the Equal Protection Clause of the New Mexico Constitution, (3) the Establishment Clause of the United States Constitution, (4) the Establishment Clause of the New Mexico Constitution, and (5) the New Mexico Civil Rights Act.[1] Doc. 1. In their Response, Plaintiffs clarify that their alleged injuries include economic, recreational, aesthetic, psychological and stigmatic harm. Doc. 18 at 14. Plaintiffs request declaratory and injunctive relief prohibiting enforcement of the Act. Doc. 1 at 3.

In their motions, Defendants seek dismissal of the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 12 at 1; doc. 14 at 1. Defendants argue that the Complaint should be dismissed on jurisdictional grounds or, in the alternative, for failure

---

[1] Because the parties have analyzed the federal and state constitutional claims alike, the Court does as well.

to state a claim. Doc. 12 at 3. Regarding the jurisdictional challenges, Defendants argue that Plaintiffs lack standing, their claims are not ripe, supplemental jurisdiction over the state claims is not appropriate, and the claims against Vice Chair Lopez are barred by the Eleventh Amendment. Doc. 12 at 3-11. For the reasons set forth herein, the Court agrees that it lacks jurisdiction to decide this case. The Court therefore need not consider whether Plaintiffs have stated a claim upon which relief can be granted, and must dismiss the Complaint without prejudice and without reaching the merits of the case.

1. **Plaintiffs lack standing to bring their constitutional claims.**

    a. **Law of Standing**

For a claim to be considered by a federal court, the plaintiff must establish proper standing. *W. Watersheds Project v. Interior Bd. of Land Appeals*, 62 F.4th 1293, 1296 (10th Cir. 2023) (reiterating that it is the burden of the party seeking federal jurisdiction to establish standing); *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007) ("Each plaintiff must have standing to seek each form of relief in each claim."). "[T]o establish standing, a plaintiff must show (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To assess the third prong, that of redressability, "a court will consider the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, 593 U.S. 659, 671 (2021).

An organization suing on behalf of its members must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Utah Ass'n of Ctys. v. Bush*, 455 F.3d 1094,

1099 (10th Cir. 2006) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342-43 (1977)).

> **b. There is no redressable remedy for the alleged economic, recreational, aesthetic, and psychological injuries, and therefore Plaintiffs lack standing for the claims based on those injuries.**

In this case, Plaintiffs allege that the exception in Section 17-11-4(H) causes them particularized harm and is unlawful. Doc. 1 at 3. It is Section 17-11-4(H), and only Section 17-11-4(H), as opposed to the entire statute, that they allege to be a violation of the Equal Protection Clauses and Establishment Clauses of both the United States and New Mexico Constitution. *Id.* Plaintiffs allege economic, recreational, aesthetic, psychological, and stigmatic injuries. Doc. 18 at 14. Plaintiffs challenge the *exception* in Section 17-11-4(H) as unconstitutional and unlawful, but the relief they request is a prohibition on enforcement of the *general* ban, rather than a retraction of the exception. Doc. 1 at 3.

Plaintiffs' claims of economic, recreational, aesthetic, and psychological harm are not redressable injury, and therefore Plaintiffs do not have standing to raise those claims, because these claims result from the general prohibition against trapping on public lands, rather than from the exception stated in Section 17-11-4(H) that they purport to be discriminatory. For instance, Plaintiffs suffer economic injury because they can no longer trap on public lands, not because someone else may still be permitted to do so. *See Awad v. Ziriax*, 670 F.3d 1111, 1121 (10th Cir. 2012) (explaining that plaintiff's injury must be a consequence of the alleged constitutional violation). The allegedly unlawful discrimination is not the source of Plaintiffs' economic, recreational, aesthetic, and psychological injuries. *See Day v. Bond*, 500 F.3d 1127, 1135 (10th Cir. 2007) (finding that, for purposes of standing, discrimination can constitute an injury, but it is not redressable injury if the injury would not be solved by excising the allegedly discriminatory

5

practice); *Dep't of Educ. v. Brown*, 600 U.S. 551, 565 (2023) ("[T]he Department's decision to give *other* people relief under a *different* statutory scheme did not *cause* [the plaintiffs] not to obtain the benefits they want.") (emphasis in original).

The basis of the Complaint is that the exception is unlawful. However, even if the Court were to find the exception unlawful, it would not strike down the entire Act, only Section 17-11-4(H). *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-29 (2006) ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem. We prefer, for example, to enjoin only the unconstitutional applications of a statute while leaving other applications in force, or to sever its problematic portions while leaving the remainder intact."). If Section 17-11-4(H) is unlawful, and not the rest of the Act, only Section 17-11-4(H) would be enjoined. There is no allegation that the general ban is unlawful.

The general notion that a court will enact a narrow remedy upon only the part of a statute that is unconstitutional, rather than enjoining an entire statute, comes from judicial respect for legislative power. "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987) (quoting *Buckley v. Valeo*, 424 U.S. 1, 108 (1976) (quoting *Champlin Refining Co. v. Corp. Comm'n of Oklahoma*, 286 U.S. 210, 234 (1932))). In this case, it is not evident. The purpose of the law was to prohibit trapping and thereby protect domestic and wild animals. Dan McKay, *New Mexico Trapping Ban Passes House by Just One Vote*, ALBUQUERQUE JOURNAL (Mar. 18, 2021), https://www.abqjournal.com/news/local/NEW-mexico-trapping-ban-passes-house-by-just-one-vote/article_992fe330-6f6c-5e69-92e3-01519a0e1e51.html. It stands to reason that the minor exceptions to the statute including the one at issue here, which has not been utilized, are not the

main goal of the statute. There is no evidence that the main goal of the statute is to differentiate between Native American people practicing their religion and non-Native American people trapping for other purposes. For these reasons, if the Court were to find that the exception in Section 17-11-4(H) is unconstitutional, it would enjoin only that section and not the entire statute. With that remedy, Plaintiffs' economic, recreational, aesthetic, and psychological injuries would not be redressed. And because Plaintiffs' claims have no redressable remedy, Plaintiffs lack standing, and their claims cannot be addressed by this Court on the merits.

### c. Plaintiffs cannot establish standing based on the alleged stigmatic injury because it does not rise to the level of judicially cognizable harm and is not ripe for review.

The remaining alleged injury is that of stigma.[2] Doc. 18 at 14. Plaintiffs allege a stigmatic injury based on the Section 17-11-4(H) exception. Plaintiffs believe they cannot trap on public lands "*exclusively* because they are not in the favored religious and/or racial group." Doc. 18 at 15 (emphasis in original). Plaintiffs feel that they are "directly and personally subjected to exclusion based on race and religion." *Id.* at 16.

Plaintiffs' allegation of stigmatic injury, unlike their other alleged injuries, is traceable to the challenged statutory provision, that being Section 17-11-4. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (injury must stem from the challenged action and not from an intervening act). Unlike the other alleged injuries, there is no redressability problem, because if the Court found the exception in Section 17-11-4 unlawful and enjoined that provision, such injunction would remedy the injury. *See California*, 593 U.S. at 671.

---

[2] To the extent that Plaintiffs' allegations of psychological harm stem not from being unable to trap, but rather from suffering stigma because they are not in the government's alleged favored group, those harms will be treated as stigmatic injuries.

This Court recognizes the harm of discrimination and agrees that stigmatic injuries are certainly judicially cognizable. *See Awad*, 670 F.3d at 1122 (recognizing stigmatic injury as sufficient to establish standing). Even as to privileges, rather than rights, it can be extremely harmful when people are treated differently and disrespectfully. But the Court does not believe that this situation rises to the level of stigma. The Act does not disparage or insult Plaintiffs, or in fact refer to them in any way. *See, e.g. id.* at 1123 (finding standing when "the proposed state amendment expressly condemns [plaintiff's] religion and exposes him and other Muslims in Oklahoma to disfavored treatment."). Plaintiffs are not part of a disfavored group but rather are part of the general group, subject to a general ban. *See Bd. Of Cnty. Comm'rs of Sweetwater Cnty. v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002) (explaining that proper standing cannot depend upon a generalized grievance "shared in substantially equal measure by all or a large class of citizens") (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). There is no allegation that Plaintiffs are historically marginalized in any manner. *See United States v. Wilgus*, 638 F.3d 1274, 1281 (10th Cir. 2011) (discussing government interest in and "historical obligations" to "preserving Native American culture and religion").

Rather, the Section 17-11-4 exception for tribal members engaging in religious practices is meant to protect and preserve Native American culture and religion after a long history of the United States forcibly seizing Native American lands. *Id.* at 1286. Courts have long recognized the trust interest between the federal government and Native American tribes. *Id.* Specifically, important exceptions have been made and upheld for Native American religious practices in similar contexts. Perhaps most on point is the exception in The Bald and Golden Eagle Protection Act, 16 U.S.C. Section 668. The Bald and Golden Eagle Protection Act seeks to protect these birds by prohibiting the possession of eagle feathers or eagle parts, but there is an exception "for the

religious purposes of Indian tribes." *Wilgus*, 638 F.3d at 1277; *see also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 433 (2006) (excepting use in the Native American Church from ban prohibiting use of peyote).

While not as robustly defined, state governments, too, have an interest in protecting Native American communities. *See Livingston v. Ewing*, 455 F. Supp. 825, 831-32 (D.N.M. 1978) (discussing the state of New Mexico's legitimate interests in preserving tribal culture and traditions); *see also United States v. Abeyta*, 632 F. Supp. 1301, 1304 (D.N.M. 1986) (finding that "the Treaty of Guadalupe Hidalgo did confirm and perpetuate religious rights, including the use of eagle feathers in the rituals of [the defendant's] religious fellowship"); *Baldwin v. Fish & Game Comm'n of Montana*, 436 U.S. 371, 386 (1978) (both the federal and state governments can have a legitimate interest in protecting the same interests, in this case wildlife). In the Act, the state government does not raise up and favor Native Americans over others, religious activities over secular activities, or Native American religions over other religions. Rather, the Act establishes the possibility of an exception to a general ban on trapping, if promulgated in rules, to allow the continuation and preservation of Native American culture and religion. In addition, as no rules have been in fact promulgated to allow any individuals to benefit from the exception in question, the question is not ripe. Doc. 12 at 15; *Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) ("the ripeness inquiry asks whether the challenged harm has been sufficiently realized at the time of trial."). For these reasons, Plaintiffs lack standing.

2. **The Court declines to exercise supplemental jurisdiction over the New Mexico Civil Rights Act Claim.**

Having dismissed the four constitutional claims for lack of standing, the only remaining claim is Plaintiffs' New Mexico Civil Rights Act claim. In their Complaint, Plaintiffs asks the

9

Court to exercise supplemental jurisdiction over the New Mexico Civil Rights Act claim[3] pursuant to 28 U.S.C.A. Section 1367, because the claim is related to the federal constitutional claims and part of the same case or controversy. Doc 1 at 6.

The Court's supplemental jurisdiction over a state law claim "is exercised on a discretionary basis," and the Tenth Circuit has generally held that "if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citations omitted). The Tenth Circuit has explained its general disinclination "to exercise [supplemental] jurisdiction in such instances because notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Id.* at 1230 (citations omitted).

Because the Court has dismissed the constitutional claims for lack of standing, the Court will decline to exercise jurisdiction over the remaining state claim. *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). The Court finds that the issue of whether Defendants violated the New Mexico Civil Rights Act is best left for a state court's determination. *Brooks*, 614 F.3d at 1230.

---

[3] Plaintiffs also asked the Court to exercise supplemental jurisdiction over the state constitutional claims pursuant to 28 U.S.C.A. Section 1367. The Court, however, does not need to consider supplemental jurisdiction regarding the state constitutional claims because the Court has already dismissed those claims, after determining that they, like the federal constitutional claims, lack standing and therefore do not meet the Article III case and controversy requirement. *See United Food & Comm. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 551 (1996) (citations omitted) ("Article III of the Constitution limits the federal judicial power to 'Cases' or 'Controversies,' thereby entailing as an 'irreducible minimum' that there be (1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision.").

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim and will dismiss it without prejudice.

## CONCLUSION

Plaintiffs do not have standing to bring the claims alleged under the Equal Protection Clauses and Establishment Clauses of the United States and New Mexico Constitution. Having dismissed those claims, the Court declines to exercise supplemental jurisdiction over the New Mexico Civil Rights Act Claim. Because the Court dismisses the Complaint for lack of standing and lack of jurisdiction, it cannot reach any of the other issues raised.

**IT IS THEREFORE ORDERED** that Attorney General and State Game Commission Vice Chair's Motion to Dismiss [Doc. 12] and Defendant Michael Sloan's Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [Doc. 14] are **GRANTED** as follows: Plaintiffs' claims are **DISMISSED without prejudice**.

DATED this 8th day of September 2025.

_____
MARTHA VAZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE